

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

Plaintiff,

v.

**RIGHT NOW HOME BUYERS LLC,**
a Michigan limited liability company; and,

**RICKY JAMES STEELE,**
an individual; and,

**DOE TELEMARKETER,**
an unknown person or persons,

Defendants.

Case: **2:25-cv-10239**
Assigned To : **DeClercq, Susan K.**
Referral Judge: **Altman, Kimberly G.**
Assign. Date : **1/27/2025**
Description: **CMP Dobronski v. Right Now Home Buyers LLC, et al (AB)**

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against the named Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United

1

States of America, has a domicile and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Defendant RIGHT NOW HOME BUYERS LLC ("RNHB") is a limited liability company organized and existing under the laws of the state of Michigan, with a registered office located at 8501 Moon Road, Saline, Michigan 48176-9435.

4. Defendant RICKY JAMES STEELE ("Steele"), is an individual, is of the age of majority, is mentally competent, is not in the military service, and resides at 8501 Moon Road, Saline, Michigan 48176-9435.

5. Defendant Steele represents himself as being the owner of RNHB, and authorized, directed, and personally participated in the tortious conduct alleged herein..

6. Defendant DOE TELEMARKETER ("Doe") is a fictitious name for the call center and its agents responsible for the direct initiation of the illegal telemarketing calls alleged in this complaint, whose true identity is presently unknown to Plaintiff, but whose identity is well known to Defendants Steele and RNHB. Upon discovery of the true identity of Doe, Plaintiff reserves the right to amend this complaint by substituting in their true and correct identity.

<u>Jurisdiction</u>

7. This Court has jurisdiction over the subject matter of this complaint

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

8. This Court has general personal jurisdiction over Defendant Steele, pursuant to M.C.L. § 600.701, as a result of presence in the state at the time when process is served and/or domicile in the state at the time when process is served.

9. This Court has general personal jurisdiction over Defendant RNHB, pursuant to M.C.L. 600.711, as a result of incorporation under the laws of this state and/or the carrying on of a continuous and systematic part of its general business within the state.

10. This court has special or limited personal jurisdiction over Defendant Does, pursuant to M.C.L. § 600.705 and/or M.C.L. § 600.715, as a result of each defendant or its agent doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Venue

11. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were directed to a telephone number with a Michigan area code, and were received by Plaintiff in this judicial district, to wit: in Washtenaw County, Michigan.

Preliminary Statement

12. As the Supreme Court recently explained, "Americans passionately disagree amount many things. But they are largely united in their disdain for

3

robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

13. The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

14. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

15. According to the Federal Communications Commission ("FCC"), "unwanted calls and texts are the number one complaint to the FCC."

16. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

4

17. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2023 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 165 robocalls to each and every man, woman, and child. [Source: www.robocallindex.com].

18. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

19. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

20. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

<u>Telephone Consumer Protection Act</u>

21. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse.* Congress found that these calls were not only a nuisance and invasion of privacy to consumers

5

specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

22. The TCPA imposes restrictions on the use of automated telephone equipment. 47 U.S.C. § 227(b)(1).

23. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. 64.1200(a), *et seq.*

24. As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

25. Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 C.F.R. § 227(c)(1). The

FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (July 25, 2003).

26.  As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

<u>Michigan Home Solicitation Sales Act</u>

27.  The Michigan Legislature has also enacted statutes governing and restricting telephone solicitors from making or causing to be made a telephone solicitation to a residential telephone subscriber.   The restrictions include a prohibition on telephone solicitations using in whole or in part a recorded message. M.C.L. § 445.111(a)(1). A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number appears on the national do-not-call list. M.C.L. § 445.111(a)(4). Telephone solicitors must properly identify themselves and their organization.  M.C.L. § 445.111b(1) and (2).  Telephone solicitors may not block or otherwise interfere with the caller ID function of the telephone. M.C.L. § 445.111b(3).  Further, telephone solicitors may

7

not engage in specified unfair or deceptive acts or practices as set forth in the act. M.C.L. § 445.111c.

28. The MHSSA provides that a person who suffers a loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, together with reasonable attorney fees. M.C.L. § 445.111c(3).

### General Allegations

29. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, some claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

30. Plaintiff's cellular telephone number is 734-***-9671.

31. Plaintiff's cellular telephone number 734-***-9671 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004, and at all times subsequent thereto and relevant hereto.

32. Plaintiff uses his cellular telephone primarily for personal, family, and

8

household communications, and not for business purposes.

33. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

34. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations. See *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong ...").

35. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

36. Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions. See *Leyse v. Bank of*

*America Nat. Ass'n*, 804 F.3d 316, 324 (3rd Cir., 2015).

37.   The FCC has ruled that wireless subscribers who ask to be put on the national do-not-call list are presumed to be "residential subscribers." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853, at *14, ¶ 36 (FCC, 2003).

38.   A text message to a cellular telephone qualifies as a "call" within the compass of the TCPA. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667, 577 U.S. 153, 156 (2016).

39.   At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

40.   At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

41.   At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's cellular telephone number.

42.   At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendants.

43. The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at. For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (FCC, 1992).

44. The FCC has further declared that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, if the caller is making calls within the scope of the consent given, and absent instructions to the contrary. *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8028, 2015 WL 4387780, at *47, ¶ 141 (FCC, 2015).

45. Similarly, for purposes of an "established business relationship," the FCC has declared that a consumer inquiry cannot be considered to create a business relationship where the consumer's number has been captured absent that consumer's express invitation or permission to be contacted at the captured number. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8771, 1992 WL 690928, at *13, n. 67 (FCC, 1992).

46. At no time has Plaintiff released his phone number to any of the Defendants in order to have given invitation or permission to be called at that number.

11

47. Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at \*20, ¶ 52 (FCC, 2015).

48. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at \*49, ¶ 142 (2003) [Emphasis as in original].

49. The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at \*29 (2015).

50. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at \*3, ¶ 7 (2005).

51. A seller may be liable for violations by its representatives under a broad

12

range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, at *9, ¶ 28 (2013).

52. A seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. *In re Dish Network,* 28 FCC Rcd. 6574, 6592, 2013 WL 1934349, at *15, ¶ 46 (2013).

53. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

54. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 WL 5966340, *4 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the

13

conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

55. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

56. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

57. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part

14

in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

58. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

59. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

60. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

61. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

15

62.  For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law.  A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

<u>The Concert of Action</u>

63.  Defendants Steele, RNHB, and Doe are engaged in a real estate marketing scheme.  They contact owners of real estate, representing that they are an investor with cash looking to purchase real estate for their personal investment, and inquiring if the property owner is interested in selling their real property for a very quick sale, of course at a price substantially below market.

64.  Doe is a third-party call center contracted by Defendants RNHB and Steele to identify prospective property owners who may be interested in or have need for the services being offered by Defendants RNHB and Steele.

65.  Defendants target real estate owners who are vulnerable or in a distressed situation and in need of a quick sale of their property and then use heavy-handed tactics to cause the seller to accept a substantially below market-based price for the property.

66.  Defendants RNHB and Steele represent that they are offering a service to the property sellers, taking the property "as is, where is", and saving the seller from the costs of a real estate brokers' fees and the delays inherent with listing a property

through a conventional real estate broker.

67. After Steele and/or RNHB have acquired a property from a seller, they will then "flip" the property back onto the market at a price commensurate with the market.

68. As part of their scheme, Defendants RNHB and Steele utilize telemarketing to identify and target prospective consumers who are interesting in selling their real property.

69. Defendants RNHB and Steele, either directly or through their third-party telemarketer, Doe, initiate telephone calls *en masse* using automated telephone dialing systems which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers.

70. Defendants obtain lists of names and telephone numbers of real property owners, input the lists into the automated telephone dialing system, and the automated system will then, using the random or sequential number generator, select numbers from the lists and dial them and transmit SMS text messages to the consumers..

71. Defendants Steele, RNHB, and their third-party telemarketer, Doe, do not scrub their outbound telephone lists against the National Do Not Call Registry.

72. Defendants RNHB and Steele, and their third-party telemarketer, Doe, do not have a written do not call policy, as is evidenced by their blatant disregard of the TCPA and FTSA requirements.

73. The automated telephone dialing system utilized by Defendants is designed

to call a telephone number and send an SMS text message gauging the called party's interest in selling their property.

74. If, and when, a called party responds with a text message back, Defendants RNHB and Steele will then telephone the called party to solicit the called party to utilize RNHB's services.

75. During the course of the telemarketing text message calls, Defendant RNHB and Steele's third-party telemarketer, Doe, go to great lengths to conceal their identity so as to avoid potential liability under the TCPA and other consumer protection laws. For example, the caller identification numbers displayed for the SMS text message do not allow a called party to make a do-not-call demand; the SMS text messages are devoid of any identity information as to the calling entity; the SMS text messages contain no telephone number or other information identifying the called party.

<u>The Calls</u>

76. Two decades ago, in 2004, Plaintiff acquired cellular telephone number 734-***-9671.

77. Between January 1, 2024 and January 14, 2025, Plaintiff has received at least a dozen telephone calls (not text messages) from unidentified callers asking to speak with either Mr. and/or Mrs. Kapp and inquiring whether there was interest in selling real property at 3*** P******** Drive[1], Ann Arbor, Michigan. Uniformly, the

---

[1] Plaintiff has redacted the address for privacy concerns.

18

calls would display false caller identification numbers and the callers would refuse to identify themselves. Despite Plaintiff repeatedly telling the callers to "do not call," the calls still continued. Prior to January 15, 2025, Plaintiff had not received any text messages directed to Mr. and/or Mrs. Kapp.

78. Plaintiff's investigation has postulated that the timing of the commencement of Plaintiff receiving calls for Mr. and/or Mrs. Kapp coincides with the death of one of the two.

<u>Call 1</u>

79. On January 15, 2025, at approximately 12:20 P.M., Defendants RNHB and Steele, or their third-party telemarketer, Doe, initiated an SMS text message call to Plaintiff's cellular telephone number 734-***-9671.

80. The caller identification number displayed was 734-602-4607.

81. The SMS text message read:

> Hey Kapp - Are you available to talk about selling your home. We are interested in acquiring a few more properties in - please give me a call back at this number so we can make an offer. I look forward to talking with you!

79. On January 15, 2025, at approximately 12:21 P.M., Plaintiff responded to the text message with the message: "Who are you?", but received no response.

80. On January 15, 2025, at approximately 12:30 P.M., Plaintiff dialed telephone number 734-602-4607 to make a do-not-call demand. The call was

answered by a recorded message stating that this was a text message only number and provided instructions to the calling party to text "STOP" to block future text messages.

81. On January 15, 2025, at approximately 12:31 P.M., Plaintiff sent a "STOP" text message to telephone number 734-602-4607.

Call 2

82. On January 16, 2025, at approximately 12:21 P.M., Defendants RNHB and Steele, or their third-party telemarketer, Doe, initiated an SMS text message call to Plaintiff's cellular telephone number 734-***-9671.

83. The caller identification number displayed was 734-602-4607.

84. The SMS text message read:

> Hi Kapp Did you have a minute for us to give you an offer on [3*** P******* Dr] Ann Arbor MI 48108?  Hope all is well and we look forward to talking with you. Thanks Mary

85. On January 16, 2025, at approximately 12:58 P.M., Plaintiff responded to the text message with the message: "Mary, do I know you? What company r u with?", but received no response.

Call 3

82. On January 17, 2025, at approximately 12:30 P.M., Defendants RNHB and

Steele, or their third-party telemarketer, Doe, initiated an SMS text message call to

Plaintiff's cellular telephone number 734-***-9671.

83. The caller identification number displayed was 734-602-4607.

84. The SMS text message read:

> Hey Kapp Im sure you have a hectic schedule.
> When will you have a couple minutes to chat
> about an offer on [3*** P******* Dr] Ann
> Arbor MI 48108? We actually buy properties
> AS IS and COVER ALL CLOSING COST.
> I look forward to hearing from you.  Thanks

85. On January 17, 2025, at approximately 6:45 P.M., Plaintiff responded to

the text message with the message: "I tried calling you but the number doesn't work.

That number can I call you at?", but received no response.

<u>Call 4</u>

82. On January 18, 2025, at approximately 12:19 P.M., Defendants RNHB and

Steele, or their third-party telemarketer, Doe, initiated an SMS text message call to

Plaintiff's cellular telephone number 734-***-9671.

83. The caller identification number displayed was 734-602-4607.

84. The SMS text message read:

> Hope your day is well Kapp.  Did you have
> time to chat today about [3*** P******* Dr]
> Ann Arbor MI 48108?

85. On January 18, 2025, at approximately 12:19 P.M., and solely to better

21

identify the caller and to be able to make an express do-not-call demand,  Plaintiff responded to the text message with the message: "Yes in about 5 minuted" [*sic*], but received no response.

Call 5

86. On January 19, 2025, at approximately 12:21 P.M., Defendants RNHB and Steele, or their third-party telemarketer, Doe, initiated an SMS text message call to Plaintiff's cellular telephone number 734-***-9671.

83. The caller identification number displayed was 734-602-4607.

84. The SMS text message read:

> Hi Kapp I just spoke with my finance department and we are still buying in this area. We can CLOSE QUICK and WE BUY AS-IS. Do you have some time to chat? Thanks

85. On January 19, 2025, at approximately 12:58 P.M., and solely to better identify the caller and to be able to make an express do-not-call demand, Plaintiff responded to the text message with the message: "Mary, do I know you? What company r u with?", but received no response.

Call 6

86. On January 20, 2025, at approximately 11:12 A.M., Defendants RNHB and Steele, initiated a telephone solicitation call to Plaintiff's cellular telephone number

22

734-***-9671.

87. The caller identification number displayed was 888-247-1338.

88. Upon answering the call, the caller identified himself to Plaintiff as "Ricky Steele with Right Now Home Buyers." Steele stated that Plaintiff had been texting back and forth with his associate. Steele confirmed that he was calling regarding the property at [3*** P********* Drive], Ann Arbor, Michigan.

89. Steele discussed the service that he was offering, that he buys homes from sellers who are distressed and need to sell quickly, that the sellers will save because they are not paying real estate broker fees or the long delays often experienced with listing a house for sale through a real estate broker.

90. Plaintiff complained to Steele about the annoying telemarketing calls and texts which Plaintiff keeps receiving. Plaintiff inquired of Steele as to the source of the SMS text messages that Plaintiff had received. Steele explained that he utilizes a third-party telemarketing service to bring him those "leads."

91. Steele volunteered that, often times, his third-party telemarketer will provide him "leads" of persons who are not interested in selling their homes or did not have homes to sell in the first place.

92. Plaintiff inquired of Steele as to how or why the third-party telemarketer had selected Plaintiff's telephone number to send SMS text messages to. Steele

23

volunteered that the SMS text messages were sent by an artificial intelligence robot (AI Bot) system. Further, Steele volunteered that the AI Bot system has the capability to monitor people's cell phones and pick up on key words, and that Plaintiff likely, "while having dinner," had discussed wanting to sell his house and the AI Bot system picked up on that.

93.  At no time during the telephone conversation did Plaintiff provide his cellular telephone number.

## Call 7

94.  On January 20, 2025, at approximately 11:20 P.M., Defendants RNHB and Steele initiated an SMS text message call to Plaintiff's cellular telephone number 734-***-9671.

95.  The caller identification number displayed was 734-780-1284.

96.  The SMS text message read:

> Hey this is Ricky from Right Now Home Buyers! Tap this link to get my business card
>
> https://blinq.me/JcPwKo6yrmrE?u=c6-fZ1U1

## Call 8

97.  On January 20, 2025, at approximately 11:52 A.M., Defendants RNHB and Steele, initiated a telephone solicitation call to Plaintiff's cellular telephone number 734-***-9671.

24

98.  The caller identification number displayed was 888-247-1338.

99.  Upon answering the call, Plaintiff was again speaking with Steele.

100.  Steele was confirming that Plaintiff that had received his business card and further inquired as to Plaintiff's interest in selling the home.

101.  Plaintiff informed Steele that he needed a couple of days to speak to his sister regarding the possible sale, and requested that Steele send a written offer. Plaintiff provided Steele with a controlled email address.  Plaintiff informed Steele that Plaintiff would call Steele back after Plaintiff had spoken to his sister.

102.  At no time during the telephone conversation did Plaintiff provide his cellular telephone number.

103.  On January 20, 2025, at approximaetly 12:51 P.M., Plaintiff received an email from Ricky Steele, ricky@rightnowhomebuyersco.com, which included a written intent to purchase offer.

<u>Call 9</u>

104. On January 20, 2025, at approximately 1:00 P.M., Defendants RNHB and Steele initiated an SMS text message call to Plaintiff's cellular telephone number 734-***-9671.

105.  The caller identification number displayed was 734-780-1284.

106.  The SMS text message read:

I just wanted to confirm that you got the PDF
and was able to print it

<u>Call 10</u>

107. On January 20, 2025, at approximately 4:44 P.M., Defendants RNHB and Steele, initiated a telephone solicitation call to Plaintiff's cellular telephone number 734-***-9671.

108. The caller identification number displayed was 734-780-1284.

109. Upon answering the call, Plaintiff was again speaking with Steele.

110. Steele was calling to determine whether Plaintiff had yet discussed the sale of the property with his Plaintiff's sister.

111. At no time during the telephone conversation did Plaintiff provide his cellular telephone number.

## COUNT I
## TCPA VIOLATION - AUTOMATED CALL

112. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra.*

113. The use of an automatic telephone dialing system is evident in the SMS text messages received in Calls 1 through 5, *supra*, as the messages were generic, impersonal, and had the same general content. Also evident in Call 1 is a blank space where pertinent information should have been filled in. The fact that none of the messages were replied in response to timely text message responses sent by Plaintiff also infers the use of an automatic telephone dialing system.

26

114. Each of Calls 1 through 5, *supra*, were in violation of 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants or Defendants' agent initiated a telemarketing call to a cellular telephone line using an automatic dialing system without the prior express consent of the called party and there being no emergency.

115. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls, and the fact that Plaintiff had made a STOP demand during Call 1.

**COUNT II**
**TCPA VIOLATION - AUTOMATED CALL**

116. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra.*

117. Each of Calls 1 through 5, *supra*, were in violation of 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants or Defendants' agent initiated a telemarketing call to a residential telephone line using an automatic dialing system without the prior express written consent of the called party and there being no emergency.

118. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls.

**COUNT III**
**TCPA VIOLATION - DO NOT CALL REGISTRY**

119. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra.*

120. At no time did Plaintiff consent to an "established business relationship" with any of the Defendants as Plaintiff never provided his telephone number to any

of the Defendants for Defendants to call.

121. Each of Calls 1 through 10, *supra*, were in violation of 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone number listed on the National Do Not Call Registry of persons who do not wish to receive telephone solicitations.

122. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## TCPA VIOLATION - FAILURE TO HONOR DNC REQUEST

123. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra*.

124. A text message of "STOP" is a do-not-call request.

125. Each of Calls 2 through 10, *supra*, were in violation of 47 C.F.R. § 64.1200(d)(3) and/or 47 C.F.R. 64.1200(d)(6), as Defendants or Defendants' agent did not honor Plaintiff's do not call request.

126. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## TCPA VIOLATION - FAILURE TO IDENTIFY

127. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra*.

128. Each of Calls 1 through 5, *supra*, were in violation of 47 C.F.R. §

64.1200(d)(4), as Defendants or Defendants' agent did not provide Plaintiff with the name of the individual caller, the name of the person or entity on whose behalf the ccall was being made, and a telephone number or address at which the persona or entity may be contacted.

129. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls, and the several text messages where Plaintiff expressly requested identifying information but was not responded to..

## COUNT VI
## MHSSA VIOLATION

130. Plaintiff incorporates the allegations of paragraphs 1 through 111, *supra.*

131. Each of Calls 1 through 5, 7, 9, and 10, *supra*, displayed a caller identification number with a Michigan area code (i.e., 734), thus indicating that the call originated on the public switched telephone network in Michigan.

132. During Call 6, Defendant Steele disclosed that he was located in Saline, Michigan.  It is logical to infer that, during Call 8, Defendant Steele was similarly located in Saline, Michigan.

133. Each of Calls 1 though 10, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants and/or Defendants' agent made a solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), as

Defendants and/or Defendants' agent did not, at the beginning of the telephone solicitation, state his or her name and the full name of the organization on whose behalf the call was initiated.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, and each of them jointly and severally, as follows:

A.  Damages:

I.  Damages for violations of the TCPA alleged:

| Count | Violations |
| --- | --- |
| I | 5 |
| II | 5 |
| III | 10 |
| IV | 9 |
| V | 5 |

A total of 34 violations at $500.00 per violation for damages of $17,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $51,000.00.

ii. Damages for violations of the MHSSA alleged at Count VI: 5 violations at $250.00 per violation, for damages of $1,250.00;

The cumulative total amount of damages claimed in this action (exclusive of additional calls and violations to be ascertained during discovery) is $52,250.00, and in the event of default judgment is the sum

30

certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants and/or Defendants' agents from initiating any telephone calls to Plaintiff's telephone numbers.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff makes demand for a jury trial as to all the issues so triable.

Respectfully submitted,

Dated: January 22, 2025

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

31

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARK W. DOBRONSKI

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
PRO SE

## DEFENDANTS
RIGHT NOW HOME BUYERS LLC,
RICKY JAMES STEELE, and
DOE TELEMARKETER

County of Residence of First Listed Defendant    Washtenaw, MI
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227
Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 52,500.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE
January 22, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Mark W Dobronski*

## FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?     ☐ Yes   ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)     ☐ Yes   ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

**MARK W. DOBRONSKI**
**POST OFFICE BOX 99**
**DEXTER, MICHIGAN 48130-0099**
**(734) 641-2300**
**markdobronski@yahoo.com**

January 22, 2025

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

Re:     NEW FILING
        Mark W. Dobronski v. Right Now Home Buyers LLC, *et al.*

Dear Sir or Madam:

Enclosed please find:

- Check number 1043, in the amount of $405.00, representing the filing fee required for the above-case;

- Civil Cover Sheet

- Two (2) Summonses; and,

- Complaint

Please file the Complaint in your usual course and return the signed Summonses to the attention of the undersigned so that the undersigned may arrange service..

Thank you for your attention to this matter.

Very truly yours,

Mark W. Dobronski

MWD/hp

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

U.S. MARSHALS

FROM:

MARK W DOBRONSKI
PO BOX 99
DEXTER, MI  48130-0099

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE

Retail

US POSTAGE PAID
$10.10

Origin: 48130
01/22/25
2525100130-09

PRIORITY MAIL®

0 Lb 8.50 Oz

RDC 03

EXPECTED DELIVERY DAY: 01/24/25

C052

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

USPS TRACKING® #



9505 5123 0482 5022 3900 96




how2recycle.info

PAPER
POUCH

- Expected delivery date spe
- Domestic shipments includ
- USPS Tracking® service in
- Limited international insur
- When used internationally,

*Insurance does not cover certain if
Domestic Mail Manual at *http://pe.t
** See International Mail Manual at.

FLAT RATE E
ONE RATE ■ ANY WEIG

TRACKED ■ I

EP14F October 2023
OD: 12 1/2 x 9 1/2

PS00001000014

This package is made from post-consumer waste. Please recycle.